## EXHIBIT A

## AFFIDAVIT OF KEVIN M. LIMA

I, Kevin M. Lima, being duly sworn, do hereby depose and state that:

1.      I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing criminal law and duly authorized by the Attorney General to request a search warrant.  I am employed as a Task Force Officer ("TFO") with the United States Drug Enforcement Administration ("DEA"), and have been so employed since October 2011.  As such, I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2.      I am a detective with the Stoughton Police Department currently assigned to the U.S. Drug Enforcement Administration and the Organized Crime Drug Enforcement Task Force ("OCDETF") Boston Strike Force in Watertown, Massachusetts.  I have been a Stoughton police officer for approximately thirteen years, and a narcotics detective for the last four years.

3.      My primary duties as a DEA TFO include the investigation of organized narcotic traffickers, narcotics-distribution and money-laundering offenses, and other federal and state crimes.  I have received training in the field of narcotics enforcement and investigations including, but not limited to, the identification of common street drugs such as Oxycodone. During my tenure as a police officer, detective, and TFO, I have worked on over 100 drug investigations as a case agent and in a supporting role.  I have participated in approximately 5 to 10 investigations that involved the use of court-ordered interception of wire and/or electronic communications.  Through my training, education, and experience, I have also become familiar

with the manner in which illegal drugs are transported, stored, and distributed, and with methods

of payment for such drugs.  I am familiar with various means of negotiations, communication, as

well as the appearance, packing, texture and smell of certain narcotics.  I am also familiar with

the vernacular, or code words and terms, which sellers and users of narcotics use.  Further, I am

familiar with the manner in which narcotics organizations utilize various forms of violence and

intimidation to protect their operations, members, narcotics, and narcotics proceeds, in

furtherance of their narcotics trafficking activity.

4.     During the course of my law enforcement career, I have written and/or

participated in the execution of numerous search warrants both as a Detective with the Stoughton

Police Department and as a Federal Task Force Officer with the DEA.  In a substantial number

of residential searches executed in connection with the drug investigations in which I have been

involved, the following kinds of drug-related evidence have typically been recovered:

(a) controlled substances, such as marijuana, oxycodone, cocaine, and heroin; (b) paraphernalia

for packaging, processing, diluting, weighing, and distributing controlled substances; (c) books,

records, receipts, notes, ledgers, and other papers relating to the distribution of controlled

substances; (d) personal books and papers reflecting names, addresses, telephone numbers, and

other contact or identification data relating to individuals involved in the distribution of

controlled substances; (e) cash, currency, and records relating to controlled substances income

and expenditures of money and wealth, such as money orders, wire transfers, cashier's checks

and receipts, bank statements, and checkbooks; (f) specially manufactured hidden compartments

known as "hides" that are used to store drugs and drug proceeds and which are at times

electronically controlled and operated; and (g) firearms and other dangerous weapons.

2

5.      I submit this affidavit in support of a Complaint for Forfeiture *in Rem* against the following asset:

      a.     $42,00 in United States currency, seized on June 14, 2014, from Freddy Sanchez and Richard Sanchez in Stoughton, Massachusetts; and

      b.     $8,000 in United States currency, seized on June 16, 2014, from Bank of America safe deposit box number 940, located at 677 Centre Street, Boston, Massachusetts and held in the name of Freddy Sanchez

(the "Defendant Currency").

6.      This affidavit does not contain all the information known to me and other law enforcement officers regarding this investigation, but only those facts sufficient to establish probable cause for forfeiture of the Defendant Currency.

7.      This affidavit is based upon my personal knowledge, as well as information provided to me by law enforcement personnel, and my review of records and reports relating to the investigation.

8.      As set forth below, I have probable cause to believe that the Defendant Currency is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) because it represents moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846, proceeds traceable to such an exchange, and/or moneys, negotiable instruments, or securities used or intended to be used to facilitate such a violation.

## The Seizure of the Currency

9.      At approximately 11:10 p.m. on June 13, 2014, Stoughton Police responded to a home invasion at 45 Bennett Drive, Apt. 4, Stoughton, Massachusetts (the "Sanchez

Apartment"), which is the residence of Richard Sanchez ("Richard") and Freddy Sanchez ("Freddy").   Upon arrival, officers were met by Richard who was hysterical and told them he was looking for his brother who had been beaten and kidnapped.   The officers entered the apartment building and proceeded to the second floor, to the Sanchez Apartment.   The door was wide open and the officers followed Richard inside.   The apartment was in a state of disarray and appeared to have been ransacked as if someone was looking for something.   The officers cleared the apartment and did not locate anyone inside, so they began to search the rest of the building.   Responding to the commotion and screaming from the front of the building, the officers found Freddy in the backseat of a parked car with duct tape around his neck and hands and bleeding from the head.   Officers noticed three unknown suspects running from the vehicle in opposite directions, but were unsuccessful in locating them.   Freddy was then transported to the hospital by a Stoughton Fire ambulance.

10.     Subsequently, a Massachusetts State Search Warrant was issued for the Sanchez Apartment for evidence involving the crime of Assault and Battery with a dangerous weapon. On June 14, 2014, at approximately 7:15 a.m., the search warrant was executed in the presence of Richard and Freddy.   During the execution of the search warrant, I noticed a piece of the kickboard on the bottom of the kitchen cabinets did not match the remaining kickboard.   Upon further examination, I noticed that section was attached by magnetic pieces and, when it was removed, a hidden compartment was discovered.   A search of the hidden compartment resulted in the discovery of a large amount of U.S. currency, one bottle of the drug cutting agent Inositol, and a digital scale.   At this point, I requested Stoughton Police Sergeant Brian J. Holmes and his narcotics detection canine, Annie, to respond to the Sanchez Apartment.   Annie is certified in

narcotics detection by the Stoughton Police Department and is recertified annually.

11.     Annie performed a cursory search of the kitchen and alerted to the presence of narcotics odor by lying down and placing her nose in the area of the kickboard that was removed. Based on Annie's response, the U.S. currency removed from the hidden compartment was seized as drug proceeds.

12.     At this point, the search stopped until I could get the search warrant amended. At approximately 8:30 a.m., after the search warrant was amended to include the possibility of narcotics being present at the Sanchez Apartment, the search resumed.   During the execution of the amended search warrant, officers discovered a drug ledger on top of the kitchen table, a Bank of America safe deposit box key in Richard's bedroom, and a Bank of America receipt for safe deposit box number 940 in Freddy's bedroom.

13.     On June 16, 2014, a federal search and seizure warrant was authorized for the search of safe deposit box number 940 at the Bank of America branch located at 677 Centre Street, Boston, Massachusetts.  At approximately 4:15 p.m. on June 16, 2014, the search warrant was executed and a sum of money was seized from the safe deposit box as drug proceeds.

14.     On June 18, 2014, the drug proceeds were brought to Brinks to officially be counted.  The money discovered in the kickboard at the Sanchez Apartment was found to be $42,000 U.S. currency and the money from the safe deposit box was found to be $8,000 U.S. currency.

15.     At the time of the search and seizures, neither Freddy nor Richard had legitimate employment or income.  Both Freddy and Richard have prior criminal histories including drug trafficking in Puerto Rico and at this time, it is believed Freddy has fled to the Dominican

Republic.

## Conclusion

16.      Based upon the information set forth above, I have probable cause to believe that

the Defendant Currency is subject to forfeiture to the United States pursuant to 21 U.S.C.

§ 881(a)(6) because it represents moneys, negotiable instruments, securities, or other things of

value furnished or intended to be furnished by any person in exchange for a controlled substance

or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846, proceeds traceable to such an

exchange, and/or moneys, negotiable instruments, or securities used or intended to be used to

facilitate such a violation.

Signed under the pain and penalties of perjury, this 3rd day of April 2015.

Kevin M. Lima, Task Force Officer
United States Drug Enforcement Administration